(No. 6076. December 21, 1933.)

ALBERT ALBERTINI, Respondent, v. HULL LEASE, a Mining Partnership Comprised of JOHN PEARSON, GRACE DUNN, ALBINA SKINA, ALBERT ALBERTINI, MRS. E. J. DUFF, C. E. H. MALOY and H. J. HULL, Employer, and STATE INSURANCE FUND, Surety, Appellants.

[28 Pac. (2d) 205.]

P. C. O'Malley and J. Ward Arney, for Appellants.

H. J. Hull, for Respondent.

MORGAN, J.—This is an appeal from a judgment of the district court reversing an order of the industrial accident board which denied respondent's claim for compensation for disability caused by injury by accident arising out of and in the course of his employment by Hull Lease, a mining partnership. The board's order was based on the ground that respondent was a member of the mining partnership which operated the mine where he worked when

the accident occurred and was, therefore, not an employee within the meaning of the workmen's compensation law.

 Whether he was an employee, as contemplated by that law, so as to bring him within the benefits thereby provided for workmen injured by accident arising out of and in the course of their employment, is the only question here for decision. The answer to that question is to be found in the law governing mining partnerships and in the contract which created this one.

The contract provides that the mining and milling operations and business shall be conducted and supervised as a majority in interest of the partners shall determine and direct; that no partner shall incur any indebtedness against the company except on authority of such majority; that any partner who performs labor in conducting the mining and milling operations shall be paid wages at a rate to be agreed on; that, all things being equal, the partners shall be given preference over strangers in the matter of employment, but the fact that one is a partner shall not prejudice the majority in interest, or the regularly employed manager, from discharging him.

The record shows that at the time of the accident respondent was the owner of a 48/198 interest in the Hull Lease and that ownership of the remaining 150/198 interest was divided among eight other persons; that he was regularly employed by the mining partnership as mine foreman; his name was carried on its payrolls the same as those of its other employees, and wages, fixed by agreement, paid to him were included in the payrolls on which the amounts of premiums for the compensation policy issued by State Insurance Fund were estimated. It does not appear that respondent's right to wages was, in any respect, dependent on profits arising from the business of the mining partnership.

A great many authorities with respect to the rights, under the Workmen's Compensation Law, of stockholders of corporations and members of partnerships, who are employed as workmen by such corporations and partnerships, are to be

found in annotations appearing in 15 A. L. R. 1288, 25 A. L. R. 376, 44 A. L. R. 1217, 47 A. L. R. 843, and 81 A. L. R. 644.

It is very generally held that a stockholder in a corporation who is employed by it, and who would otherwise be entitled to compensation for an injury by accident arising out of and in the course of his employment, is not precluded therefrom by his ownership of stock.

The decisions in cases involving claims for workmen's compensation by members of partnerships for injuries by accidents arising out of and in the course of their employment by such partnerships are conflicting, the numerical weight of authority being opposed to recovery. The denial of compensation to partner-workmen appears to be based on the theory that ''the workmen's compensation act clearly does not contemplate such a mixed relation as that existing between partners, wherein each member of the partnership is at the same time principal and agent, master and servant, employer and employee; and wherein each, in any services he may render, whether under his general duty as a partner, or under a special agreement for some particular service, is working for himself as much as for his associates in carrying on the business of the firm.'' (*Cooper v. Industrial Acc. Com.*, 177 Cal. 685, 171 Pac. 684.) That theory is neither applicable to the law of mining partnerships nor to the facts of this case.

In attempting to correctly answer the question before us, the facts of the case and the law governing the kind of partnership under consideration must not be lost sight of. Respondent's relation to the mining partnership; the nature of his work; that he receives wages, not profits or dividends therefor; that he owned a minority interest, and that the duration of his employment was subject to the will of the majority in interest of the partners, has heretofore been pointed out.

In *Hawkins v. Spokane Hydraulic Min. Co.*, 3 Ida. 241, 28 Pac. 433, this court quoted from our statutes governing

mining partnerships, now I. C. A., secs. 52–401 to 52–412, inclusive, and, commenting thereon, said:

"It was long since decided by the courts that a mining partnership differed from an ordinary partnership in many of its features, among which are the following: It is formed without any express agreement between the parties, existing from joint ownership in a mine and working the same. One partner may sell his interest without the consent of the others, or die, and the partnership is not dissolved. A new owner may purchase an interest in the mine, or inherit it, and he becomes a mining partner in the working thereof. . . . . It differs from an ordinary partnership in another respect, also, in that, as stated above, the majority in interest have the right to control the method of working and the means to be employed. In these respects and in its continuity, it resembles a private corporation."

That case was again before the court and the second decision thereof is to be found in 3 Ida. 650, 33 Pac. 40, wherein the court quoted from *Taylor v. Castle,* 42 Cal. 367, as follows:

" 'It is well established now that in such partnerships there is no *delectus personae.* The partnership is not dissolved by the death of a partner, nor as a consequence of a sale of an interest to a stranger. As, therefore, the sale of an interest to Seligman did not dissolve the partnership, I think by his purchase he presumptively became a partner, although he took no part in the management of the partnership affairs, and never held himself out to the world as a partner.' "

Our court further said:

"It will be seen by this decision that Seligman became a partner by reason of his ownership of shares, and was liable for the debts, although he never assisted in working the mine, or in the management of its affairs, nor held himself out as a partner. In this, it, the mining partnership, is seen to be precisely like a corporation. In short, a mining partnership, by virtue of our statute, in all its essential elements is precisely like a corporation."

The most important difference between this mining partnership and one organized for the purpose of conducting business, generally, arises from the fact that respondent owed no duty to perform any service for the mining partnership and might have been excluded from doing so by the partners owning the majority interest. His employment was not fixed by the partnership relation, but was subject to his contract with the owners of the majority interest exactly as it would have been had he not been a partner. So far as his right to employment by the mining partnership was concerned, his relation to his employer was the same as that of a minority stockholder of a corporation to the corporation.

No more reason exists for denying respondent compensation in this case than would exist were the mining partnership, of which he is a member, a corporation and he a minority stockholder thereof.

The judgment is affirmed. Costs awarded to respondent.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.