378 P.2d 195

Robert K. ROBERTSON, Plaintiff-Appellant,

v.

Samuel F. SWAYNE, William F. Robertson and Jean Robertson Ash, Defendants-Respondents.

No. 9115.

Supreme Court of Idaho.

Jan. 24, 1963.

J. H. Felton, Lewiston, for appellant.

Ray McNichols, Orofino, for respondents.

McQUADE, Justice.

William Fernando Robertson, hereinafter referred to as Dr. Robertson, was a phy-

sician residing at Orofino, Idaho. On June 27, 1950, Dr. Robertson died leaving a will dated September 27, 1946 and codicil dated June 10, 1950. On July 29, 1950, said will and codicil were duly proved and admitted to probate as the last will and testament of Dr. Robertson in the Probate Court of the County of Clearwater, State of Idaho.

The codicil devised certain real property situated in Clearwater County, known as the "Jennings Farm", to Samuel F. Swayne "to be held in trust by him, his heirs and assigns for the benefit of Robert K. Robertson until he, the said Robert K. Robertson, attains the age of Sixty (60) years". The codicil further provided that "in the event the said Robert K. Robertson predecease the said trustee prior to attaining the age of Sixty (60) years, I direct my said trustee to execute a deed to William F. Robertson, and Jean Robertson, my son and daughter, and thereby terminate this trust".

In addition to the duty to convey the above mentioned property to William F. Robertson and Jean Robertson Ash in the event Robert K. Robertson died before attaining the age of sixty, the codicil provided that the trustee should have "full, complete and exclusive power, right and authority, without bond or intervention by Courts, except as required by law, to manage and control the same in every respect, the said trustee to account for the revenue, rents and profits thereof, to the said Robert K. Robertson, annually, under direction of the Probate Court, of Clearwater County, * * *."

In 1951 Swayne applied to the Probate Court and was granted a decree of settlement of account and distribution of the property of Dr. Robertson's estate. Subsequently in that same year Swayne as trustee filed with the Probate Court an inventory and appraisement which was filed according to law and stated that he held the property in trust.

After Dr. Robertson's death in 1950, the appellant, Robert K. Robertson continued to live on and occupy the "Jennings Farm" from 1951 through 1957. He collected all the rents and profits of the farm. He also paid all taxes, insurance and upkeep thereon. However, appellant had the trustee's permission to live on the premises and to perform these various acts. During the above mentioned years and while appellant personally collected the rents and income of the trust property, he reported this income to the trustee.

In turn, the trustee filed an annual accounting in the Probate Court for the years 1955 through 1958. According to the testimony of the trustee, he and the appellant agreed, immediately after the closing of the testamentary estate, that it would be more economical and efficient for the beneficiary to live on the property, care for it, and to collect income derived from operation

of the farm. Thus, while appellant actually managed the property here in question, it is contended he did so with permission of the trustee, and was obligated to account to the trustee.

In 1957, Mr. Swayne, as trustee, petitioned to have appellant summoned into the Probate Court because of accounting troubles. During 1958 and part of 1959, Swayne collected income derived from the trust property.

In 1959, appellant brought this action against the trustee and the contingent remaindermen to quiet fee simple title to the trust property in himself, claiming such title by virtue of adverse possession. The trustee answered denying the claim of adverse possession. In addition, the trustee claimed title to the land by force of the trust and by virtue of his position as trustee under that trust. The trustee further alleged that possession of the premises by appellant was permissive and therefore not adverse. William F. Robertson, one of the remaindermen, answered, denying appellant's claim of adverse possession, contending that such possession was permissive. He further claimed an interest in the premises as a contingent remainderman. The case was submitted to the court on an agreed statement of facts, depositions of the parties, exhibits and files of the cause. The trial court found the plaintiff was not entitled to relief as requested and rendered judgment for the defendants.

Robert K. Robertson now appeals from that judgment, contending the court erred in refusing to quiet title to the "Jennings Farm" in him on the following grounds: (1) William F. Robertson and Jean Robertson Ash have in writing waived any interest in the farm; (2) the trust is a "dry" or "passive" trust and appellant, as the beneficiary of such a trust, is entitled to have the title to the property vested in himself; and (3) the appellant is entitled to have title granted to him under rights acquired by adverse possession.

■ Appellant contends that the contingent remainermen, by signing a "Receipt of Distributive Share" of the estate, waived any right they might have had to the trust property here in question. These receipts, after first reciting that the undersigned has received a certain specified portion of the estate in question provide as follows:

"The undersigned hereby releases and discharges the said *executor* from all other and further obligations to the undersigned of any kind whatsoever and consents upon the filing of this receipt and release that the said *executor* be released and exonerated and discharged by a proper order of the above entitled court." (Emphasis supplied.)

It should be noted that appellant also signed such a receipt. These "receipts" release the executor from liability, in his capacity as executor, to those who sign such instruments. We are not here concerned with Mr. Swayne's liability as an executor. Rather, we are concerned with the question of whether the trust instrument imposed upon Mr. Swayne, as trustee, such duties as will support the judgment of the trial court in concluding that this was an enforceable trust. The "receipts" signed by the contingent remaindermen do not purport to release their interests as contingent remaindermen in the trust property.

Appellant next contends that the trust is a "dry" or "passive" trust. Appellant asserts that if a trust becomes "dry", the cestui que trust is entitled to the legal title of the trust property. He admits the trust as established in the will was an active trust. Appellant contends, however, that the trustee "did not put the trust into operation" because he did not take control of the trust property or manage it. In determining whether a trust was active or passive, it was said in Beals v. Croughwell, 140 Neb. 320, 299 N.W. 638, at 641, 138 A.L.R. 1330:

" 'So long as the trustee, either expressly or by implication, has imposed upon him some affirmative and substantial duty to perform or useful purpose to subserve, or discretion to exercise with respect to the control, protection, management, or disposition of the trust property, or to protect the estate for a given time or until the death of some person, * * * the trust remains an active trust.' "

In the case of In re Hickok's Will, 61 N.M. 204, 297 P.2d 866, at 871, that court said:

" * * * it is generally held that where property is placed in trust for a term and the trustees at the expiration of the term are to divide the corpus among *contingent remaindermen,* the trust is an active one, in view of the evident purpose of the settlor to suspend the procurance by the remaindermen of the legal estate until the expiration of the term stated. 1A Bogert, Trusts and Trustees, § 207, pp. 288, 289."

■ Where it is apparent from the language creating the trust that the trustee is charged with performance of active duties with respect to control, management and disposition of the property, the trust is an active one. In re Bowman's Estate, 332 Pa. 197, 2 A.2d 725; In re Bergland's Estate, (Pa.) 92 A.2d 207; In re Zoller's Estate, 373 Pa. 451, 96 A.2d 321. See also 54 Am. Jur., Trusts, Sec. 13, p. 30.

■ In this case, the trustee was given the present duty to manage and control the estate, and also the duty to deed the property to appellant if he should attain the age

of sixty years. If the appellant died before attaining the age of sixty, the trustee would then have the duty to convey the land to the contingent remaindermen. Appellant asserts, however, that the trustee failed to manage the property and that his inaction in this respect caused the trust to become a "dry" trust. These duties to control and manage the estate did not embrace all of the duties of the trustee. As noted previously, he also had the duty to convey the property to the appellant if he should attain the age of sixty years, or convey it to the contingent remaindermen as otherwise provided by the trust. The facts indicate the trustee actively participated in the control and management of the trust property. Appellant's contention that inactivity on the part of a trustee can convert an active trust into a passive trust is without merit. In Hesseltine v. First Methodist Church of Vancouver, 23 Wash.2d 315, 161 P.2d 157, at 161, that Court, considering the same question, held:

"We do not think trustees, by failure to exercise their powers, can transform an active trust into a passive one. In any event, the statute of uses cannot be invoked because the trustees' title is subject to * * * (a) contingent estate * * *".

Appellant further contends he has established his right to title by adverse possession. Appellant stated in his deposition he recognized the validity of the trust; that he filed fiduciary reports with his income tax returns for the years 1951 through 1957; that he made reports to the trustee concerning income from the trust property; that he consulted with the trustee concerning management of the property; and that he on numerous occasions told other persons the property was "in trust", and he could not sell the property.

There are facts to show that appellant was allowed by the trustee to remain in possession and to manage and control the trust property. This Court in Farmers' Cooperative Irr. Co. v. Alsager, 47 Idaho 555, 277 P. 430 said: "a use that is permissive in its inception does not ripen into an adverse use * * * until something is done to bring notice to the owner that the character of the use has changed." A cestui que trust in possession of trust realty is in law regarded as a tenant at will of the trustee, his possession being subordinate and not adverse to the trustee's legal title. In the absence of a clear and manifest hostility brought to the knowledge of the trustee, and until the tenancy of the cestui is terminated, he cannot hold adversely to the trustee. 2 C.J.S. Adverse Possession § 109 e, p. 663. A review of the record fails to indicate that the trustee or the contingent remaindermen had any notice appellant was holding adversely to their respective interests prior to 1958. Accordingly, appellant, having commenced this quiet title action

in 1959, failed to establish he had occupied the land adversely to the trustee and the contingent remaindermen for the required five year period. I.C. § 5–207.

The judgment appealed from is affirmed.

Costs to respondents.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.